IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TENNESSEE

WESTERN DIVISION

_____

UNITED STATES OF AMERICA,

               Plaintiff,

vs.                                 NO. 2:20-CR-20009

FREDERICK COLEMAN,

               Defendant.

_____


SENTENCING HEARING


BEFORE THE HONORABLE JON P. McCALLA, JUDGE


FRIDAY

26TH OF FEBRUARY, 2021

LISA J. MAYO, RDR, CRR
OFFICIAL REPORTER
FOURTH FLOOR FEDERAL BUILDING
MEMPHIS, TENNESSEE 38103

**UNREDACTED TRANSCRIPT**

1                   A P P E A R A N C E S

2

3

4

5        Appearing on behalf of the Plaintiff:

6            MR. KEVIN P. WHITMORE
             U.S. Attorney's Office
7            167 N. Main Street, Suite 800
             Memphis, Tennessee 38103
8            Phone: (901) 544-4231

9

10

11       Appearing on behalf of the Defendant:

12           MR. CLAIBORNE H. FERGUSON
             The Claiborne Ferguson Law Firm, P.A.
13           294 Washington Avenue
             Memphis, Tennessee 38103
14           Phone: (901) 529-6400

15

16

17

18

19

20

21

22

23

24

25

FRIDAY

February 26, 2021


----------------------


1         **THE COURT:** This is Judge McCalla, and we're

2     going to proceed. And we'll open court. We're here in

3     connection with the sentencing, United States of America

4     versus Frederick Coleman, Case Number 20-20009. The position

5     paper of the Defendant was received, and of course, there was

6     an objection as to the two-point enhancement on the subject

7     of restraint. The Court entered an order overruling the

8     Defendant's objection yesterday as Document 135. I need to

9     confirm, of course, that that has been received, and

10    Mr. Ferguson, I see that it has; is that correct?

11         **MR. FERGUSON:** It has been, Your Honor. Thank

12    you.

13         **THE COURT:** There was also some discussion and a

14    possible objection in connection with the role in the

15    offense. If you will look at the Page 6 calculation, you

16    will see that there was no adjustment for role in the

17    offense. It does appear that the role in the offense was no

18    different than that of a normal participant, particularly as

19    to one of the crimes. And in the other crime, the Defendant

20    participated at least as a getaway driver. I don't know if

**UNREDACTED TRANSCRIPT**

1  that is being pursued at this time by Mr. Ferguson.  What is

2  our situation?

3         **MR. FERGUSON:**  Your Honor, I'm asking the Court

4  to consider it in the sentencing memorandum with our request

5  for adjustments and variances on Page 4.  We are asking the

6  Court to consider basically several different ways to

7  consider the same fact, which is we believe that as far as

8  the Captain D's crime goes, the second Hobbs Act robbery, my

9  client played what would be defined as a minimal, would be a

10  minimal participant in that case in that he was acting

11  plainly among the least culpable of those in a conduct of a

12  group.  He did not enter the premise, did not display a gun,

13  did not leave the premise with any items and was at a fairly

14  -- was fairly far away at the time that the other party in

15  the group was conducting the crime.  We believe that that

16  would meet the definition under -- I think it's 3B1.2 as a

17  minimal participant, at least a minor participant where he's

18  least culpable than the most other participant in the

19  criminal activity, which would give him, it says a four-point

20  reduction for least.  The minor gives him two, and the

21  guidelines provide for something in the middle that would be

22  three.

23         We believe that based on the guidelines, he

24  should get four points under 3B1.2.  However, if the Court

25  does not find that he -- that the facts support the

**UNREDACTED TRANSCRIPT**

1    adjustment, we believe that the facts would still support

2    this Court finding a variance, while not rising to the level

3    under the guidelines, still the Court can take it into

4    consideration under the factors, 3553 factors of the nature

5    and circumstances of the crime itself, finding that he played

6    a minimal or a minor role in the Captain D's crime and

7    adjusting his sentence and/or the way in which he serves the

8    sentence based on the variance.

9          We also had asked the Court to consider the

10   variance for his behavior of being aberrant.  We acknowledge

11   the fact that it does not qualify under the guidelines under

12   5K2.20 but again believe that this Court can find under the

13   3553 factors concerning his near -- and I say near because

14   it's not no, but near lack of criminal history and nothing in

15   his background that would indicate that over the course of

16   about 6, 7 days he would be involved in two armed robberies,

17   Hobbs Act robberies, which would represent a marked deviation

18   from his otherwise law-abiding life.

19         We do recognize the fact that he was on diversion

20   at the time for evading arrest, you know.  We can argue the

21   nonviolent crime at that, a misdemeanor.  It may not be a

22   misdemeanor.  I've got to look at that again.  But he has no

23   gang affiliation, no thefts, no gun charges.  No other crimes

24   that would indicate that he would rob the stores.  So we

25   really find or ask the Court to find that this was aberrant

**UNREDACTED TRANSCRIPT**

1  behavior on this pretty short period of 6, 7 days. So those

2  are the -- either the adjustment or variances that we're

3  asking the Court to take into consideration based on the

4  facts.

5        **THE COURT:** Mr. Whitmore?

6        **MR. WHITMORE:** Thank you, Your Honor. I

7  apologize, Your Honor. I could not change the name on my

8  computer screen. I tried signing off several times, and I

9  just couldn't figure out how to do it, because my wife uses

10 it for her job Zoom as well.

11       **THE COURT:** It's no problem. No problem at all.

12       **MR. WHITMORE:** Your Honor, as the Court knows,

13 these type of mitigation roles are typically consistent with

14 drug offenses because of the nature of -- even the examples

15 that's given in 3B1.2 to some extent address this several

16 ways in terms of drug offenses. It also give an example of a

17 healthcare fraud type scheme. But in the case of robbery,

18 because there's such -- each role is essential a lot of times

19 to the crime, typically a robbery is composed of different

20 roles. You have a lookout. You have a driver, and you have

21 the gunman. And all of those roles are essential to the

22 criminal activity.

23       Also, yes, one individual can engage and go into

24 a business and rob the business, but, again, that creates

25 problems in terms of not having a car already cranked up,

1    ready to go through, not having someone to look out, whether

2    or not the cops and police is in the area.  But in this

3    particular case, Your Honor, Mr. Coleman's role was

4    essential.  It was set up as the driver, and that driver was

5    essential in to making sure that it was successful in terms

6    of being the getaway driver.

7            We know in the Waffle House robbery, he actually

8    went inside, directed the person who was walking outside back

9    into the place, stood there with the gun while Mr. Hall

10   robbed the business.  And so for that reason, Your Honor, we

11   see that his participation is significant.  It's just as

12   serious as Mr. Hall when we think of all three robberies

13   together.

14           We know for the purpose of sentencing, the Court

15   consider even acquitted conduct.  But when we look at all

16   three robberies together and Mr. Coleman's role in each of

17   them, we know that in the Dixie Queen where he, again, was

18   acquitted conduct, the Court can consider that.  He actually

19   got out of the car and went inside the business, and so he

20   had a different role in that particular robbery.  So for that

21   reason, Your Honor, we believe that that would be

22   inappropriate under these set of facts.

23           **THE COURT:**  Anything else on this, Mr. Ferguson?

24           **MR. FERGUSON:**  No, Your Honor.  We appreciate the

25   opportunity.

**UNREDACTED TRANSCRIPT**

1          **THE COURT:**  Certainly.  On the issue of the role

2    in the offense, Mr. Whitmore has accurately analyzed it.

3    It's clear that the Defendant played a traditional role, that

4    is a regular participant role, in at least one of the crimes

5    of conviction, and it appears that he also played a

6    conventional role, whatever that is, but a normal role, a

7    regular participant role in the related conduct.

8          Now, it is important to go over a couple of

9    things.  The first thing is that there appears to be no

10   dispute as to the facts as reflected in the offense conduct

11   section of the presentence report.  Those are the facts that

12   we use to analyze whether or not he would be entitled to a

13   reduction under the 5K series of guidelines.

14         I'm going to read just a small portion of that.

15   In page -- on Page 4, Paragraph 5, Waffle House robbery on

16   July 9, 2019.  Police responded to a call at the Waffle House

17   on American Way.  Upon arrival, the victim, Ms. Matthews,

18   told the officers that two male subjects entered and robbed

19   the business at gunpoint.  Ms. Matthews stated that as she

20   and Stacy Stafford were walking out of the business to take a

21   smoke break, they were approached by one of the subjects who

22   was armed with a sawed-off shotgun and another subject who

23   was armed with a small silver revolver.

24         Both of the subjects forced Matthews and Stafford

25   back inside the business, and the subject with the shotgun

stated, you know what it is. Come open the register. He

then took the cash from the cash register while the other

subject was the lookout. Both of the subjects fled the scene

on foot. Subject 1 was wearing a black and gray shirt, brown

pants and a black ski mask. Subject 2 was wearing a black

shirt, pants and a purple bandana over his face. Rafael Hall

was later identified as Subject 1, and Mr. Coleman was

identified as Subject 2.

I think this particular recitation, which is not

disputed, makes it clear that Mr. Coleman was a regular

participant in the criminal conduct. It's also correct in

connection with the argument as to Captain D's by

Mr. Whitmore that Mr. Coleman still played an essential role

in the crime itself. So that would by itself qualify,

although the first crime, the Waffle House crime is very

clear as to how Mr. Coleman should be characterized. I agree

with Mr. Whitmore that it's also proper to be characterized

as a regular participant in the Captain D's robbery. We're

also allowed to look at the other conduct as set out in the

Dixie Queen event on July the 8th, even though that is not

conduct as to which there was a conviction. I don't need to

go through that, but Mr. Whitmore has accurately related that

also. So this is not a case where we would normally allow a

reduction for role in the offense.

Wait just one second. I'm going to go through

1    one more item.  Under mitigating role, it is correct that a

2    defendant who is a minimal participant in any criminal

3    activity is entitled to a four-level decrease.  I don't

4    perceive that the Defense is really arguing for that.  I do

5    understand that the Defense would be arguing for perhaps a

6    three level or a two level or a one, I suppose.

7         The second is that if the Defendant was a minor

8    participant in the criminal activity, you do decrease by two

9    levels, and of course in cases that fall between A and B, you

10   can decrease by three, and I think you could also

11   theoretically decrease by one.  We've discussed the

12   participant and the requirement for multiple participants,

13   and there were multiple participants here, so I think that

14   we've probably covered what we need to.  It is correct that

15   we do reduce the points where there is substantially less

16   culpability than the average participant.  That's simply not

17   the case here.

18        Now, the next question though is on the subject

19   of aberrant behavior.  Any discussion on that, Mr. Ferguson?

20   **MR. FERGUSON:**  Your Honor, this is a 30-year-old

21   individual, who, for the most part, has what was reduced down

22   to a disorderly conduct and was on diversion for a

23   misdemeanor evading arrest.  He has nothing in his background

24   that indicates that this was the behavior that we would be

25   expecting from a 27, 28-year-old Frederick Coleman or 29 at

1  that time, 28, Frederick Coleman.  It is so far outside the

2  scope of nearly 30 years of his life.  It's outside the scope

3  of everything that would make up any indication of his

4  criminal background from the age of juvenile court, which is

5  about 12 or 13 on, that this is so far outside the normal

6  course and behavior of Mr. Coleman that I think it qualifies

7  under the variance.  We do know it doesn't qualify

8  necessarily under the adjustment, but we think that for

9  purposes of fashioning the appropriate sentence, this Court

10 should find that this was aberrant behavior and take that

11 into consideration as we argue what the appropriate

12 punishment should be for this particular defendant with this

13 particular crime.  Thank you.

14         **THE COURT:**  What about the language of the

15 provision itself?  The Court may depart downward under this

16 policy statement only if the Defendant committed a single

17 criminal occurrence or single criminal transaction, that one,

18 was committed without significant planning; two, was of

19 limited duration; and three, represented a marked deviation

20 by the Defendant from an otherwise law-abiding life.  I

21 understand that you're arguing and there may be some evidence

22 to support the third component, that is, that it represented

23 a deviation by the Defendant from an otherwise law-abiding

24 life, but we have other components that would normally need

25 to be met.

**UNREDACTED TRANSCRIPT**

1    **MR. FERGUSON:** And again, that's why the very

2    first line in my sentencing memorandum says that he doesn't

3    qualify for it under 5K2.20. We're asking you under the

4    3553 factors simply to consider that when finding that

5    sentence which is adequate -- the least but adequate sentence

6    for Mr. Coleman that the need to deter him from future

7    criminal behavior is so small in this case because he simply

8    doesn't have that background. If this Court could find that

9    third prong normally that was so far outside the normal

10   behavior, that that limits and reduces the Court's need to

11   impose a greater punishment to deter him from future criminal

12   activity. Thank you.

13              **THE COURT:** Certainly. Certainly.

14              Mr. Whitmore?

15              **MR. WHITMORE:** Your Honor, I think you said

16   exactly my response. I mean, we have -- I think that that is

17   a situation where a defendant, for whatever reasons, decides

18   to commit a crime, and it's one crime and he has no criminal

19   history. Limited, very limited criminal history. In this

20   particular case, Mr. Coleman committed a robbery on July 8th,

21   and maybe if he had stopped there, maybe there's a potential

22   argument, but then he committed another robbery on July 9th.

23   And then we have another robbery on July 15th. And as the

24   Court knows, robbery, sometimes there could just be a

25   knee-jerk reaction. Two gentlemen riding by the car and

**UNREDACTED TRANSCRIPT**

1  decide to rob a particular place.  But anytime you start

2  engaging in multiple robberies, there's a certain amount of

3  planning that goes on.

4          It seems that even when we look at Mr. -- the

5  robbery at the Captain D's, he was parked in a car wash,

6  quite a bit of space distance from the Captain D's.  When you

7  look at his role in the Dixie Queen that they gradually drove

8  through the drive-in and kind of stayed back and waited.  I

9  mean, all of these things, there's a certain amount of

10 planning that went into these activities.  So for that

11 reason, Your Honor, for the purpose of the aberrant behavior,

12 I understand Mr. Ferguson wanting to weave this into his

13 3553 arguments, but for the purpose of the aberrant behavior,

14 we object.

15         **THE COURT:**  And I think that Mr. Ferguson has

16 been candid in acknowledging that it really doesn't meet the

17 guideline.  It's clear that it does not meet the guideline

18 requirements, and the only argument I think that's being

19 advanced now -- and I'm sustaining the Government on any

20 variance, and I think it's not really -- not opposed by

21 defense counsel.  I'm sustaining the position on that.  The

22 only thing we have to consider is consider whether it's a

23 basis for a variance.  So I'll sustain the position of the

24 United States, which is really not that much in conflict with

25 Defense position, and then we'll talk about it in light of

1   the 3553(a) factors.

2          I think, Mr. Ferguson, that addresses the issues

3   here.  I know that, however, you may want us to have an

4   opportunity to hear from Mr. Coleman, and Mr. Coleman, I want

5   to make sure you've been able to hear us okay.  You've been

6   able to hear us okay?

7          **THE DEFENDANT:** (No audible response.)

8          **THE COURT:**  You're on mute, so I think if you're

9   responding, we wouldn't be able to hear that.

10         **MR. WHITMORE:**  Excuse me, Your Honor?

11         **THE COURT:**  Yes, sir.

12         **MR. WHITMORE:**  If seems -- I think Mr. Coleman

13  may have a witness as well.

14         **THE COURT:**  Yes, that's fine.  I'm just checking

15  on hearing.  Rechecking on hearing.  I think that it's not

16  been a problem, but I usually do that at the very beginning.

17  I want to check now.  You've been able to hear us all right?

18         **THE DEFENDANT:**  Yes, sir.

19         **THE COURT:**  Okay.  Yes, sir.  I do want to also

20  reconfirm that you have agreed to handle this sentencing by

21  Zoom in light of the circumstances created by the COVID-19

22  pandemic; is that still correct?

23         **THE DEFENDANT:**  Yes, sir.

24         **THE COURT:**  And also you did want to have someone

25  here also, and I think she is here; is that correct also?

**UNREDACTED TRANSCRIPT**

1        **THE DEFENDANT:**  Yes, sir.

2        **THE COURT:**  Okay.  I think then we are ready to

3    proceed with any testimony, and of course a chance for

4    allocution by Mr. Coleman.

5            Mr. Ferguson?

6        **MR. FERGUSON:**  Your Honor, the people who are on

7    line are family members who just wanted to be present.

8    They're not witnesses.  So they had asked for the Zoom

9    password, and we were able to get them to it.  Obviously,,

10   since this is still considered an open court, they're here

11   simply as observers, not as witnesses.

12       **THE COURT:**  That's fine.

13       **MR. FERGUSON:**  We won't be calling them.

14       **THE COURT:**  I did see Ms. Stephanie Coleman on

15   line.  There may be someone else.  I don't know because it's

16   a blank screen there.

17       **MR. FERGUSON:**  Your Honor, the last I saw, it

18   should have been Ms. Coleman.  It should be Mr. Coleman's

19   wife and possibly his mother, but I know she had to be at

20   work this morning, but she did want to be present also.  So

21   there's at least two, if not three of his family members who

22   are here just to show the Court that he does have family

23   support.

24           And I would ask if Mr. Coleman wishes to make any

25   statements.  Mr. Coleman, if you have something that you feel

1 | the Court needs to hear from you, this is your chance, and

2 | you don't have to, as we talked about.  If you want to, you

3 | can.

4 |         **THE COURT:**  Mr. Coleman, is there anything you

5 | wanted to let us know about?  This is a chance to make any

6 | statement you would like to make.

7 |         **THE DEFENDANT:**  I really haven't gave much

8 | thought or planning, but I would like the Court to know that

9 | I'm not a bad person.  I'm not a criminal.  I worked all my

10 | life.  I worked two jobs to provide for me and my family.  I

11 | have a one-year-old son that I would love to get back to so I

12 | can raise him as a man, and I have a loving wife, family.

13 | I'm a regular person like everyone else.  I'm not a criminal,

14 | and that is not the thing that I do.  And really haven't much

15 | to say, but I would like you all to know that.

16 |         **THE COURT:**  Certainly.  Anything else?

17 |         **THE DEFENDANT:**  No, Your Honor, nothing that I

18 | can think of at the moment.

19 |         **THE COURT:**  All right.  I think we're ready to

20 | proceed on discussion of factors under 18 U.S.C.

21 | Section 3553(a), and we'll start with the United States

22 | under 3553(a) factors.  I'm going to go through a couple of

23 | things at this point however.  In this case the Court will

24 | adopt the presentence report as set out, offense level total

25 | is 24.  The criminal history category is II.  There are four

1   counts of conviction after a jury trial.  The robbery counts

2   were Counts 3 and 5, and they have a maximum sentence of

3   20 years and the guideline range of 57 to 71 months.

4          In connection with the 924(c) counts, those are

5   Counts 4 and 6.  The sentencing possibilities under 924(c)

6   counts are in this case because they're brandishment of a

7   firearm, no less than seven years.  If you look at the

8   presentence report, of course, the maximum sentence for a

9   924(c) violation is life in prison.  We have two 924(c)

10  violations, Counts 4 and 6.  924(c) violations are served

11  consecutively as opposed to concurrently, and they are

12  consecutive to each other and consecutive to the robbery

13  crimes set out in Counts 3 and 5.

14         That results in a possible sentence as reflected

15  in the recommendation, which you all have with a low end of

16  225 months.  Looking at the recommendation sentence that is

17  the recommendation indicated.  So we're looking at a

18  difficult sentence in the case, as everyone can tell.  To put

19  it in terms of years, the recommended sentence is 18 years

20  and 9 months.

21         Are there any objections or corrections to the

22  calculations under the discussion of minimum sentences in the

23  case?  Mr. Ferguson?

24         **MR. FERGUSON:**  No objections to the calculations,

25  Judge.

1          **THE COURT:**  Anything at all I should ask also

2     from the Government?

3          **MR. WHITMORE:**  No, Your Honor, thank you.

4          **THE COURT:**  Does the Government wish to take a

5     position regarding the application of 18 U.S.C.

6     Section 3553(a) and possible final recommendation?

7          **MR. WHITMORE:**  Yes, yes, we do, Your Honor.

8          **THE COURT:**  Yes, sir.

9          **MR. WHITMORE:**  Thank you, Your Honor.  In

10    considering the 3553 factors and as we start, Your Honor,

11    with the nature and circumstances of the offense, what's

12    important here that I think that a trial brings out is the

13    victim element.  We seldom get a chance to see the impact

14    that these cases have on the victim.  Yes, when we look at

15    the history and characteristics of Mr. Coleman, but when I

16    look at the nature and circumstances of the offenses, we have

17    several victims in this case.

18          When we start off with the victims that the Court

19    heard from the Waffle House.  The Court heard Tylanda

20    Matthews and Stacy Stafford, and they talked about the fear,

21    the intimidation and how that just affected them days and

22    weeks after.  When we look at the Captain D's robbery, that

23    robbery was very -- really graphic in terms of what could

24    have happened when Mr. Hall pointed a gun at a 16-year-old

25    young man.  I almost wanted to say kid.  I hope I can still

**UNREDACTED TRANSCRIPT**

1  say that, but a 16-year-old kid who had only been working

2  there less than a week, and literally this happened almost on

3  his birthday.  And Mr. Hall, when he pulled the gun on

4  Mr. Xavian Cain, he had no idea that his mother was there

5  standing behind him and almost, if it wasn't for the sister

6  trying to intervene, and we only know what would have

7  happened if that had happened.

8         And so -- and then we look at -- when we look at

9  the Dixie Queen, we have, as the Court knows, in terms of

10  even though he was acquitted, that information can be

11  considered for the purpose of punishment in 3553, is that you

12  had two gentlemen working that night, and they were robbed at

13  gunpoint.  People entered the business.  They had to run out

14  of the business.  So when we think about the robbery, I mean,

15  that is a very, very aggressive crime.  It is no other crime

16  close to so a personal act against an unwilling participant.

17         These are people who woke up in the morning, went

18  to work to provide for their families, and to face a gunman,

19  putting a gun in their faces, and all the witnesses stated

20  that they -- that they feared for their life.  People thought

21  they were going to die.  A gunman pointed.  So when we look

22  at the nature and circumstances of the offense of these

23  offenses, I mean, this is as serious as it gets.  And we're

24  not talking about one robbery, and we're not talking about

25  one victim.  We are talking about multiple victims and

**UNREDACTED TRANSCRIPT**

1   multiple robberies.  So the circumstances of the offense is

2   very serious.

3          There is some credit to Mr. -- when we look at

4   the history and characteristics of Mr. Coleman, it seems to

5   his credit, Your Honor, he has an employment history that we

6   sometimes seldom see, and his criminal history is somewhat

7   limited.  It's not as egregious.  But Your Honor, that only

8   mitigate the fact in light of the multiple robberies.

9   Typically I would be asking for a high end of the guideline

10  as it relates to the robbery.  And his lack of criminal

11  history and employment may mitigate the Government asking for

12  the high end of the robbery.

13         When we look at the -- that an offense should

14  reflect the seriousness of the offense, promote respect for

15  the law, as well as general deterrence, I think people ought

16  to hear about a person engaging in robbery receiving a

17  substantial punishment, especially when they involve multiple

18  robberies and they involve the firearm.  If Mr. Coleman maybe

19  had just only been the getaway driver but we showed in one of

20  the robberies, he actually went in the business, escorted the

21  witness back into the -- I'm sorry, the victim back into the

22  business, pointing a gun at the victim.

23         And so with that being said, Your Honor, the need

24  for adequate deterrence for that type of criminal behavior is

25  very serious, and the specific deterrence, that may not be as

1 great in light of Mr. Coleman criminal history. We're not --

2 again, we're not conceding that this is an aberrant act.

3 Maybe if it involved one act but because it involved multiple

4 acts, multiple opportunities where the individuals had to

5 plan, and so for that reason, Your Honor, we're asking for a

6 guideline sentence. We're asking for a middle of the

7 guideline range, consecutive to 14 years.

8         **THE COURT:** All right. A middle guideline range

9 in connection with the robberies would be something between

10 57 and 71 months, with 14 years then consecutive as a result

11 of the 924(c). So that's the Government's recommendation and

12 request.

13         Mr. Ferguson, what do we need to do here?

14         **MR. FERGUSON:** Yes, Your Honor. Thank you. If

15 you have any trouble hearing me, please let me know. This

16 may be a little bit of a mixed metaphor. Obviously, in state

17 court the distinction between robbery and agg robbery is use

18 of a gun. We have -- in federal court we have Hobbs Act

19 robbery, and then we have the 924. So if I refer to this as

20 an aggravated robbery, that's why I'm doing it today.

21         I think there's no one on this phone call that

22 would deny the fact that under the nature and circumstances

23 of the offense that every aggravated robbery is aggravated.

24 The very use of a weapon during the course of a robbery

25 increases the potential for violence, the danger in this, the

1  impact it has on those people who are the victims of these

2  kind of crimes.  I do not shy away from that fact in this

3  case.  These are -- if it had been state court, these are

4  aggravated robberies.  Obviously, Hobbs Act robbery and the

5  corresponding two 924s.  That is what it is, and these were,

6  as far as aggravated robberies go, unfortunately or

7  fortunately, these were -- I don't want to say -- I don't

8  want to say average or normal aggravated robberies, but we

9  have all dealt with cases where they were much worse.  And

10  unfortunately in my state court practice, a lot of my murders

11  start out as aggravated robberies that go horribly off the

12  rails very quickly.

13          This could have been much worse.  I think it's

14  probably what I'm trying to express to the Court.  However,

15  we not only have to look at the nature of the crime, we have

16  to look at the history and characteristics of the Defendant.

17  This Court is bound by the parsimonious clause that the

18  punishment should be no more than necessary and that because

19  of the 924 consecutives, mandatory minimums create a base

20  that this Court cannot go down below anything below 14 years

21  just on those two charges alone, which are and is, in our

22  opinion, a lengthy punishment, a punishment that is deserved

23  and a punishment that does reflect the seriousness of the

24  nature and circumstances of the offense when taken into

25  consideration the Defendant who is 30 years of age this month

1  with a prior criminal history of a disorderly conduct and an

2  evading arrest that he was on diversion for.  It appears from

3  the presentence report they filed a violation and then

4  dismissed it, so technically I would assume that means his

5  evading arrested was diverted and is no longer on his record.

6         As far as deterrence goes, I've already talked

7  about that when we talked about the aberrant behavior.

8  There's nothing in Mr. Coleman's prior history, and we know

9  that prior history is the greatest predictor of future

10  behavior.  There is nothing in his prior history that

11  indicates -- well, let me back up.  There's nothing in his

12  prior history that indicated that he would be doing these

13  crimes, first of all.  Second of all, with the punishment

14  that this Court has to give him, with his prior history of no

15  prior or previous violent felonies, violent offenses, there

16  is nothing that indicates that anything more than the minimum

17  sentence in this case would increase any deterrence either

18  both Mr. Coleman's future behavior or those other individuals

19  in the community that somehow we, under this deterrence

20  philosophy, think that people watch what sentences other

21  people get change their behavior based on those other

22  peoples' punishments.

23         I think that even if that were factually true and

24  that people did review the press releases of the federal

25  government and make determinations how they were going to

1  live their life, a 14-year sentence sends a message to those

2  individuals that a decade and a half of your life is

3  forfeited at the age of 30 for the choices you made.  A

4  decade and a half is a long, long time for somebody who, for

5  all practical purposes, led what would be considered a

6  extremely normal -- and actually it's probably -- it's

7  probably my bias as a criminal defense attorney who doesn't

8  necessarily get to see what normal is on a day-to-day basis,

9  but his normal life, his personal life is he's married, has a

10  son, was employed.  His wife works.  His baby is healthy.  He

11  has no physical, no mental, no substance abuse issues, he's

12  not a gang member.

13          He actually dropped out of school, but he dropped

14  out of school indicating some academic difficulty.  He didn't

15  drop out of school because he was getting into trouble.  He

16  didn't drop out of school because he was doing drugs.  He

17  didn't drop out of school because he was involved in gangs.

18  He didn't drop out of school because he didn't have a loving

19  family that supported him and wanted him to do well.  He just

20  simply had academic difficulties that were not -- apparently

21  were not properly addressed or properly addressed by the

22  school system.  And so he does not have a high school degree

23  but for the fact that he had difficulties.

24          I'm asking the Court and the Court has the

25  authority to do this, we know under the Dean case, holding

**UNREDACTED TRANSCRIPT**

1   that nothing in the requirements of the consecutive sentences

2   on the 924s prevents the Court from imposing time served on

3   the nonconsecutive sentence.  This is a case where luckily

4   this is under the new sentencing for 924, so he's not facing

5   a 25-year sentence on the second one, but they are, I guess,

6   brandishing or employing seven years on each, and that

7   amounts to 14 years of his life.  And I believe that for

8   purposes for meeting the no more than necessary under the

9   3553 factors that this Court has reviewed and has been

10  presented, I think that 14 years is the adequate sentence

11  that's no more than necessary punishment for Mr. Coleman in

12  this case.

13          So we are asking the Court to set the punishment

14  at 14 years, and I would assume that that would be time

15  served on the underlying two Hobbs Act robberies.  That's our

16  recommendation for the Court.  We ask the Court to accept

17  that and sentence Mr. Coleman to 14 years.  Thank you, sir.

18          **THE COURT:**  In every case we consider the same

19  factors, those that are required under 18 U.S.C.

20  Section 3553(a).  In this case the first factor we consider

21  is what did the Defendant do.  The way that is stated in the

22  statute is that we look at the nature and circumstances of

23  the offense.  That has been gone over already.

24          And we have a case in which there were a number

25  of witnesses.  In fact, there were 15 witnesses.  We heard

1  from the individuals who were present at the locations that

2  were robbed and the impact on them, and it was impactful to

3  everyone in the courtroom as we heard the testimony regarding

4  the mother watching her young son be robbed.  All of them

5  were significant events.  Each of the robberies were a

6  significant event in the life of each of the families.

7          The record is well developed as to what happened

8  and well developed as to Mr. Coleman's role in each of those

9  robberies.  I adopt the position as set out by Mr. Whitmore

10  as he articulated the particular events.

11          The second question is the one that has been most

12  important for the Defense in the case, and that -- and it's

13  been important to the Government, and that is what is the

14  history and what are the characteristics of Mr. Coleman.  We

15  have a detailed report, and it sets out Mr. Coleman's

16  educational background as well as information that is always

17  important in terms of mental acuity and so forth.

18          The personal data starts on Page 12 of the

19  report, and it reflects the fact that his mother has been

20  employed with the city of Memphis, apparently for a long

21  period of time.  He has four siblings, provides some of the

22  information regarding those siblings, including that two of

23  the siblings, as I understand it, work in the medical area.

24  He was raised primarily by his mother in North Memphis.

25          He is married and that relationship remains

**UNREDACTED TRANSCRIPT**

1    intact.  He gave some information about living and the home

2    in which he has lived.  It also, as usual, provides emotional

3    and mental health data, and there's no issue there, as the

4    Court understands it.  On substance abuse it does provide an

5    important piece of information.  It says that the Defendant

6    smoked marijuana from the age of approximately 16 until two

7    days prior to his arrest for the instant offense.  He denied

8    the use of any other controlled substances or narcotics, but

9    he has also never participated in any substance abuse

10   treatment program.

11            On education, it provides information as to his

12   attendance at Millington High School.  He did reportedly stop

13   attending.  He did stop attending because of academic

14   difficulties.  It appears that he may have participated in

15   special services class for mathematics and that he was active

16   in sports.

17            On employment it provides that he has been

18   employed at the FedEx World Hub for a period of time.  Also

19   as a landscaper and at International Service System facility

20   in Memphis, Tennessee.

21            Now, it also provides information as to prior

22   criminal conduct, and it is limited.  It is set out on Page 9

23   with a -- at age 18 assault fourth degree reduced or amended

24   to disorderly conducted in Greenville, Kentucky at age 18.

25   Driver's license issues and then evading arrest at age 28.

1    And very limited criminal history, as Mr. Clayborn pointed

2    out but a criminal history, just quite limited.  He's had

3    other contact with the law, but it's been at Page 10 related

4    to driving violations primarily.

5             So that's the information available.  Now, once

6    we know those two basic pieces of data, we're required to ask

7    ourselves these questions.  The sentence needs to, one,

8    reflect the seriousness of the offense, promote respect for

9    the law and provide for just punishment for the offense.

10   These were crimes involving robbery, clearly with a firearm.

11   Those are very serious crimes, and that's been thoroughly

12   discussed.  We would expect in the federal system for those

13   crimes a very substantial punishment.  The concept that this

14   is something that could be passed over or overlooked or

15   treated lightly is simply not applicable in the federal

16   system.  This is a -- this is a very serious crime or set of

17   crimes.  So a sentence of multiple years, whether that would

18   be 15 or 16 or 17 or 18 or 19 or 20 is the idea behind the

19   federal sentencing process.  That's what we would expect.

20            The second component that we're required to

21   consider is the sentence must afford adequate deterrence to

22   others.  And Mr. Ferguson makes a good practical point which

23   is that tragically, in our society, we no longer report to

24   the public the consequences of this type of conduct.

25   Amazingly, if you look at the newspapers in 1920 or 1910 or

1    1900 or even 1930 or '35, you would typically see for a crime

2    or crimes like these, a detailed story, and most people in

3    their community would be aware of it.  It is, I think,

4    correct that if people knew of the punishment that occurs in

5    connection with this criminal conduct in federal cases that

6    it would have a stronger effect, but some people do.  There

7    have been studies, although they're somewhat older now, which

8    show that in communities and cities where it is well

9    publicized that gun crimes have serious consequences, very

10   serious real consequences, that gun violence is reduced.  And

11   I think that Mr. Whitmore and Mr. Ferguson and I remember a

12   period where there was a stronger emphasis on that, and it

13   was a good thing for society.  The fact is that if known to

14   the public, these substantial sentences can certainly be

15   anticipated to have the desired effect under 18 U.S.C.

16   Section 3553(a).  So a substantial sentence would deter crime

17   if that sentence is well known.

18           Now, the third thing that we're required to

19   consider is the need to protect the public from further

20   crimes by the Defendant.  This is complicated in this case.

21   It is correct, as Mr. Ferguson observes, that if you simply

22   looked at the criminal history of Mr. Coleman, Mr. Coleman,

23   if we were looking at that, we would think that the chance of

24   recurrence of this criminal conduct was not great, but we

25   have this series of events, not a single robbery but a series

1  of events which puts before the Court the prospect that this,

2  which was clearly a deliberate decision to engage in this

3  conduct, maybe be conduct that would be repeated, that this

4  reflected some type of decision which was then implemented

5  over a period of days.  So there may be in this case a need

6  to protect the public from further crimes.  It's not as great

7  as in some matters where it is clear that the person is very

8  likely to, but in this case, it's a greater possibility than

9  the criminal history would have suggested.

10       Final thing is the sentence needs to provide the

11  Defendant with educational and vocational training, medical

12  care and other correctional treatment in the most effective

13  manner.  Certainly I know Mr. Coleman is interested in

14  getting his GED and addressing -- I think you will need to

15  address this issue with controlled substances, and so those

16  are things that would be part of the focus for a sentence in

17  the case.  In this case we would also typically require MRT

18  training, that's moral reconation training, which helps

19  individuals understand the decision making process and things

20  they can do to improve that.  And it's been suggested that we

21  have a search condition in this case as a way to discourage

22  engaging in other criminal activity, and of course there's a

23  DNA sample.

24       Once you know those four factors, then you ask

25  yourself, the Court asks itself another set of questions.

**UNREDACTED TRANSCRIPT**

1   The first question is what is the maximum sentence available.

2   Well, obviously, the maximum sentence available if you look

3   at the overall situation is life in prison.  No one is

4   suggesting it, but we need to know if you look at the 924(c)

5   charges that that is the type of sentence that at some point

6   in some circumstances courts are required to consider.  We

7   know a very long period of time and we've gone over the

8   guideline range, and we've gone over the sentencing ranges in

9   connection with the crimes involved.

10          The point about the 20-year maximum sentence on

11  robbery and the very long maximum sentence on 924(c)s is that

12  these are very serious crimes, and we have to consider that.

13  The second thing we have to consider is the guideline range.

14  We've talked about the guideline range already.  The

15  Government requests something in between the 57 and

16  71 months.  The Defendant requests that we eliminate that and

17  provide a time served sentence because of some of the

18  background information in the case.

19          We are required to consider guideline sentences

20  in every circumstance.  The reason is that the guidelines are

21  universal in the federal courts.  Every court looks at the

22  same guideline calculation.  If Mr. Coleman was in Portland,

23  Oregon or Portland, Maine or in Salt Lake City, Utah, the

24  judge would be looking at the same calculation.  And that

25  provides a level of objectivity which is central to the

formulation of sentences.  We do not want sentences that are

emotional or that are responsive to subjective factors.  That

is simply inappropriate.  We want an objective sentencing

process, one that essentially asks what did you do and what

do we need to do about that for the good of society and then

for your future.

The next thing that we are required to look at

and be sure we have considered is the need to avoid

unwarranted sentencing disparity.  That's a complicated

question.  But courts want to have essentially the same

sentence or something close to the same sentence for the same

criminal conduct in every case in the United States.  We

don't want people to get in one circumstance always time

served, for example in the robbery category and another

situation where you always get 20 years.  That would be

disturbing.  Sentences should be consistent across the

country as much as is practical, bearing in mind that we

always have to consider each individual and the particular

conduct in each case in formulating any sentence.

Then there's the requirement for restitution

where there's been the request for restitution.  In this case

that's not a factor because at least I'm not aware of any

information that we've received on restitution category.  But

if we had that from Waffle House or anywhere else that was

affected by the crime, they would be entitled to get paid

1   back.  That's what we have to consider.

2          Now, the tragedy in every case is, as Mr. Coleman

3   observed, essentially good people make terrible mistakes, and

4   we understand that.  The Court is not here to tell the family

5   or tell Mr. Coleman you're a bad person.  You did a bad

6   thing.  That's clear.  Several bad things, but that doesn't

7   say that the person is inherently bad.  That means that there

8   were bad things done.  Good people make bad mistakes.

9          Now -- and this isn't the case here, but I would

10  think it would be fair to tell everyone that Mr. Whitmore and

11  Mr. Ferguson and Ms. Boyce and I and the court reporter and

12  everybody else have seen some people that seem genuinely

13  committed to doing bad things all the time.  That, we hope,

14  is not the case for Mr. Coleman, and it's not what we're

15  looking at, we hope.  So Mr. Coleman, I'm not discounting

16  your statement on this at all.  We all hope that that would

17  be what the future will hold.

18         The sentence that should be imposed in this case

19  -- and I've really considered what the Government said on at

20  least a middle level sentencing range here, but the overall

21  sentence, Mr. Whitmore, is so great that the low end of that

22  guideline will still achieve the punishment necessary to

23  achieve just punishment but no more than is necessary.  I

24  thought about it, but the sentence should still be a

25  guideline sentence, Mr. Ferguson.  Robbery is an armed

**UNREDACTED TRANSCRIPT**

1  robbery in this case, very serious matter.

2          The sentence for the robberies should be

3  57 months.  That's four years and 9 months.  And it is the

4  guns and the use and brandishment of a firearm in the case

5  that is the fatal problem for the Defendant in this case.  It

6  is a 14-year sentence.  That's the least sentence available

7  in that circumstance, and it's required to be consecutive to

8  the robbery sentence.

9          I will tell that you no one, Mr. Coleman, is

10  going to be happy with this.  I know your family won't be

11  happy.  No one -- this is not about making people happy.

12  This is about achieving a better society through the

13  consistent application of a sentencing process that results

14  in similar sentences over long periods of time and change in

15  societal behavior.  That's what it's about, and it's about

16  punishment for the particular crimes that were committed in

17  this case.  That's what it's about.

18          So what I'm going to do is impose a 57-month

19  sentence on Count 3 and on Count 5, but that's to served

20  concurrently.  So that's one sentence of 57 months.  It will

21  be an 84-month sentence on Count 4 and an 84-month sentence

22  on Count 6.  Those sentences are served consecutively and

23  consecutively to the sentences in Counts 3 and 5 for a total

24  sentence of 18 years and 9 months.  That is 225 months.

25          Upon -- I'm going to go through -- of course also

**UNREDACTED TRANSCRIPT**

1  impose a period of supervised release of three years.  That's

2  the really minimum when you look at the provisions on

3  supervised release.  It's not the minimum but it's the in

4  between supervised release period actually because on

5  Counts 3 and 5 sentence on supervised release or the

6  supervised release period would be 1 to 3 years on

7  Counts 4 and 6, 2 to 5 years, but impose the conditions that

8  we talked about earlier, and I'm going to impose a $400

9  special assessment which is required by the law.  It's a

10  hundred dollars per count of conviction.  In this case, of

11  course, you'll have a right to appeal, and we'll go over

12  that.

13        Before I impose the sentence, are there any

14  requests for further clarification on that matter?  And I'm

15  going to -- yes, sir, I'm going to start with the Government.

16  Anything else of course that we need to hear from the

17  Government?

18        **MR. WHITMORE:**  No, Your Honor, thank you.

19        **THE COURT:**  Mr. Ferguson?

20        **MR. FERGUSON:**  Your Honor, would the Court

21  recommend him for the RDAP program based on his admission of

22  drug use up to the time of his arrest and his lack of

23  previous treatment or assistance in that addiction?

24        **THE COURT:**  And so you want him recommended for

25  the drug treatment program available in the prisons?

**UNREDACTED TRANSCRIPT**

1        **MR. FERGUSON:**   Please, sir.

2        **THE COURT:**   Absolutely, and a comment about that

3   because I know this goes to the experience that both defense

4   counsel and government counsel and probation officer have

5   seen over so many years is that there tends to be a tendency

6   to minimize the impact of this long-term marijuana use, and

7   yet, it's very significant, and it needs to be addressed

8   because of its impact on the way a person thinks and then

9   some of the detrimental long-term effects from its long-term

10  use.   So we need to recommend that, the RDAP program, we'll

11  recommend it in the case.   Anything else?

12       **MR. FERGUSON:**   No, Your Honor.

13       **THE COURT:**   Then pursuant to the Sentencing

14  Reform Act, it is the judgment of the Court that the

15  Defendant Frederick Coleman is hereby committed to the

16  custody of the Bureau of Prisons to be imprisoned for a term

17  of 57 months on each of Counts 3 and 5 to be served

18  concurrently with each other for a total period of 57 months

19  on those two counts.   And a sentence on Count 4 of 84 months

20  plus the sentence on Count 6 of 84 months.   Those sentences

21  to be served consecutively and then consecutively with the

22  sentences under Counts 3 and 5, resulting in a total sentence

23  of 18 years and 9 months, that is 225 months.

24       We will recommend the drug program as requested

25  by Mr. Ferguson.   And Mr. Coleman, it really is important to

**UNREDACTED TRANSCRIPT**

participate in that. Upon release from imprisonment, the Defendant shall be placed on supervised release for a term of three years. This consists of three years on each of Counts 3, 4, 5 and 6, all counts to run concurrently for a total period of supervised release of three years. Within 72 hours of release from the custody of the Bureau of Prisons, Mr. Coleman, you are to report in person to the probation office in the district in which you're released.

You're to abide by the following conditions of supervised release. You're to cooperate in providing a DNA sample. You're to participate in a GED program, which I understand you would like to do, or -- and/or a vocational training program. You're also to participate in drug testing and drug treatment and to participate in MRT training. I will note that I have noticed that in supervision on probation, sometimes we don't get to that, but I think we really need to, and the second thing on that is that will evolve over the years and may be called something a little different by the time that you're released.

We're also going to impose a search condition in this case, and there was no opposition to that. It does have some beneficial effects, and I am always concerned about the imposition of those conditions, but in light of the fact that it has not been opposed and it may have some beneficial effect, we will include that condition to supervised release.

**UNREDACTED TRANSCRIPT**

1        You're also, of course, not to commit another

2   federal, state or local crime.  You are to abide by the

3   Court's standard conditions of supervised release.  You are

4   not to possess any illegal controlled substances, and you are

5   not to possess a firearm, ammunition or explosives.  That's

6   an absolute requirement that you not do that, and if you do

7   possess a firearm, ammunition or explosives, you can be

8   subjected to a very substantial sentence in a separate

9   criminal charge in the future.  The family really needs to

10  know that so that they can help you avoid being compromised

11  by possession of any of those materials.  You're also to pay

12  a special assessment of $400, which is due at this time.

13        Now, in this case you went to trial, and

14  therefore you have a right to appeal your conviction in this

15  case, and you have a right to appeal the sentence that's been

16  imposed by the Court in this case.  You can particularly

17  appeal the sentence, of course, if the sentence is not one

18  allowed by the law, or if there's some other problem in

19  connection with the calculation of the sentence, although

20  there was no objection other than the limited ones raised in

21  this matter.  If you're not able to pay the cost of an

22  appeal, you may apply for leave to appeal in forma pauperis.

23  If you do that, the clerk will prepare and file a notice of

24  appeal in your behalf, and the courtroom deputy is going to

25  hand to you -- and I think this is sort of figuratively, you

**UNREDACTED TRANSCRIPT**

1  will be handed and will be supplied a form which you can use

2  to file your own notice of appeal.

3         Mr. Ferguson, I'd like for you to make sure that

4  Mr. Coleman does get that form if he would like to use it.

5         **MR. FERGUSON:**  I will check in with him, Your

6  Honor.  I'm not retained to handle the appeal, but I have

7  already indicated, I can't remember who I said this to, but

8  -- and to Mr. Coleman, I will make sure that he gets it and

9  make sure that if he does wish to appeal, either he does it

10 correctly or I will do it for him, but I will make sure --

11 one way or the other, I will make sure that his wish is

12 effectuated.

13        **THE COURT:**  Yes, sir.  Mr. Coleman, I will check

14 with you.  You might have it in front of you.  I don't know

15 that you do.  Do you currently have that form?

16        **THE DEFENDANT:**  Yes, Your Honor.

17        **THE COURT:**  Okay.  Well, that's good and you

18 heard Mr. Ferguson, and he will assist in getting it filed if

19 necessary.  Now, let me go over a couple of things in that

20 regard.  Any notice of appeal must be filed within 14 days of

21 the entry of the judgment.  The judgment will be entered

22 today.  Today is January 26th of 2021.  If you do not file

23 the notice of appeal within that time period, you essentially

24 give up forever your right to appeal any aspect of these

25 proceedings.

**UNREDACTED TRANSCRIPT**

I've already indicated that there's several ways
to proceed with an appeal. You can file the notice. You can
instruct Mr. Ferguson to file it. He's not representing you
on the appeal. He would make sure that it was filed. You
can tell us now, that is, you can tell Mr. Sample who is the
courtroom deputy clerk that you instruct him to file a notice
of appeal, and we would file it. You may seek leave to
proceed in forma pauperis, and if you do that, the clerk
would prepare and file a notice of appeal, but if you fail to
do any of those things, you will give up forever your right
to appeal your conviction and your right to appeal the
sentence in this case. Do you understand that?

**THE DEFENDANT:** Yes.

**THE COURT:** Well, I think we've covered
everything that we need to in this case. Are there any
objections not previously raised by the Defense in this case?

**MR. FERGUSON:** No, Your Honor.

**THE COURT:** Any requests for clarification or,
for that matter, objection by the United States?

**MR. WHITMORE:** No, Your Honor, thank you.

**THE COURT:** Thank you all very much. We
appreciate --

**PROBATION:** Excuse me, Your Honor.

**THE COURT:** Yes, ma'am.

**PROBATION:** I just wanted to make a note that the

**UNREDACTED TRANSCRIPT**

Defendant has a pending case in Shelby County criminal court.

   **THE COURT:** Yes. The Defendant does have a pending case. Yes, that's absolutely correct. I don't know the status on that. I understand it's simply pending, and I don't have an update.

   **PROBATION:** His next court date is April the 16th.

   **THE COURT:** Thank you so much. Thanks for telling me. I think that concludes everything in this matter. And we will let everyone be excused. Thank you all very much.

   **MR. WHITMORE:** Thank you.

   **MR. FERGUSON:** Thank you, Your Honor.

   (Adjournment.)

**C E R it I F I C A it E**

I, LISA J. MAYO, do hereby certify that the foregoing 42 pages are, to the best of my knowledge, skill and abilities, a true and accurate transcript from my stenotype notes of the SENTENCING HEARING on 26th day of February, 2021, in the matter of:

United States of America

vs.

FREDERICK COLEMAN

Dated this 05.11.2021.

S/Lisa J. Mayo

LISA J. MAYO, LCR, RDR, CRR
Official Court Reporter
United States District Court
Western District of Tennessee

**UNREDACTED TRANSCRIPT**